IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Michael D. Clardie, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 50342 |
| vs. ) | |
| ) | |
| Julie Morisette, a/k/a Julie Warkins, ) | |
| in her individual and ) | |
| official capacities et al., ) | |
| ) | Judge Philip G. Reinhard |
| Defendant. ) | |
| ) | |

**ORDER**

For the reasons stated below, defendant Julie Morisette's [35] motion for summary judgment is granted. The cause is dismissed in its entirety.

**STATEMENT-OPINION**

On October 23, 2013, plaintiff, Michael D. Clardie, a detainee at Whiteside County Jail, filed a complaint under 42 U.S.C. § 1983 alleging that defendant Julie Morisette (a/k/a Julie Warkins), a nurse at Whiteside County Jail, was deliberately indifferent to his medical needs.[1] Specifically, plaintiff complained that Morisette refused to provide him prescription medication for a knee injury he sustained in prison. He alleges that defendant's failure to provide him the prescription medication caused substantial pain and suffering and amounted to deliberate indifference to his medical needs. Plaintiff brings his claim against Morisette under the Eighth and Fourteenth Amendments. *See* [1] ¶ 10.

Defendant Morisette has answered the complaint and the parties have completed discovery. *See* [14]. Currently before the court is Morisette's motion for summary judgment. *See* [35].

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of*

---

[1] Plaintiff's complaint also asserted a state law negligence claim against Whiteside County. However, on January 3, 2014, plaintiff voluntary dismissed this claim, leaving only his Section 1983 claim against defendant Julie Morisette. *See* [12]; [13].

1

*Corrections,* 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Prior to addressing the merits of defendant's motion, the court finds it beneficial to set forth the relevant facts from the parties' Local Rule 56.1 Statements of Material Fact. In doing so, the court is cognizant of its obligation to construe all inferences in plaintiff's (the non-movant's) favor and does so accordingly. *See Schepers*, 691 F.3d at 913.

On or about October 23, 2011, plaintiff was a pretrial detainee at Whiteside County Jail when he fell in his cell and injured his right knee. [35] ¶¶ 2, 12. The next morning, he complained to a nurse at Whiteside County Jail who examined the knee and noted that it appeared swollen. [35] ¶ 12 .

On October 25, 2011, defendant Morisette was the nurse on duty at Whiteside County Jail. At sick call that day, she examined plaintiff's knee and noted that it was slightly swollen and had a small red line on it. [35] ¶ 13. Because of this, Morisette contacted the Whiteside County Jail's site physician, Dr. Wesley Harmston. [35] ¶ 13. After Dr. Harmston learned of plaintiff's condition, he ordered a portable x-ray of plaintiff's knee and prescribed Naproxen and Tylenol for pain. [35] ¶ 13. When nurse Morisette received Dr. Harmston's orders, she arranged for the x-ray to be taken the same day. *Id.* The x-ray indicated some "joint effusion and mild soft tissue swelling[,]" but did not show any traumatic injuries. [35] ¶ 15.

Shortly after he received the x-ray results, Dr. Harmston examined plaintiff's knee. Harmston noted that the knee had a "positive anterior drawer sign" and this "indicat[ed] possible ligament damage." [35] ¶ 16. Because of this, Dr. Harmston ordered an MRI.

A few weeks later, on November 23, 2011, plaintiff was granted a medical furlough day and was permitted to see his primary care physician for his knee injury. [35] ¶ 23. Upon examining plaintiff's knee, plaintiff's primary care physician wrote him a prescription for Vicodin to help with his pain. Plaintiff filled this prescription before he returned to jail and apparently submitted the prescription to the personnel at Whiteside County Jail when he re-entered the jail.

On November 29, 2011, Morisette saw plaintiff again because plaintiff was complaining of pain in his knee. [35] ¶ 26. Morisette informed Dr. Harmston of plaintiff's concerns and Harmston ordered a prescription for Naproxen and Tylenol. *Id.* At this time, plaintiff claims he repeatedly asked Morisette why he was not being administered Vicodin. Plaintiff contends that

Morisette did not provide an adequate response and instead simply refused to give him the drug and only administered Naproxen and Tylenol for the pain[2] [37] at 4; [35] ¶ 26.

Over the next month, plaintiff continued to complain of pain in his right knee. He had a handful of medical furlough days and saw various physicians on these days. Eventually, on December 14, 2011, he visited an orthopedic surgeon who recommended arthrosporic surgery. [35] ¶ 31.

Plaintiff had surgery on December 30, 2011. [35] ¶ 34. After the surgery, plaintiff's surgeon contacted Dr. Harmston to inform him that he had prescribed plaintiff Vicodin. [35] ¶ 35. Dr. Harmston approved the dispensation of Vicodin at that time and plaintiff was given Vicodin until January 2, 2012. After that, plaintiff was given Naproxen and Tylenol for his pain.

On January 5, 2012, plaintiff was released on a medical furlough for a follow-up visit with his surgeon. [35] ¶ 37. At the follow-up visit, plaintiff was given a refill for his Vicodin prescription, but Dr. Harmston did not approve the dispensation of Vicodin at that time. In his affidavit, Dr. Harmston states that he was informed of a discrepancy between the number of pills plaintiff had been prescribed and the number of pills that remained in the bottle when he returned to jail. Harmston stated that when he learned of this discrepancy he attempted to contact plaintiff's surgeon, but the surgeon refused to take Harmston's call. [35-5] ¶ 18. As a result, Harmston ordered Naproxen and Tylenol for plaintiff's pain and did not approve the dispensation of Vicodin.

On January 12, 2012, Dr. Harmston removed two sutures from plaintiff's right knee. [35] ¶ 41. At this time, Harmston ordered follow-up physical therapy with an orthopedic surgeon and ordered that plaintiff continue to receive non-steroidal anti-inflammatory drugs as well as Benadryl.

Over the next few weeks, plaintiff was transported from the jail to physical therapy sessions and was given exercises to perform on his own. These exercises were reviewed and approved by another physician at Whiteside County Jail.

Plaintiff re-injured his knee in March 2012 and complained of other injuries while in custody at the Whiteside County Jail. However, it is undisputed that whenever he complained of pain he was given pain medication. [35] ¶¶ 50; 57.

The instant case concerns plaintiff's Vicodin prescription in November 2011. Plaintiff claims nurse Morisette was deliberately indifferent to his medical needs when she refused to provide him Vicodin from November 29, 2011 until his surgery on December 30, 2011. His

---

[2]Morisette claims plaintiff did not ask her about his Vicodin prescription in November 2011. *See* [38] at 3. She disputes plaintiff's assertions to the contrary. However, for the purposes of this motion the court will accept plaintiff's version of the facts and draw all reasonable inferences in his favor.

complaint asserts a claim against Morisette in both her individual and official capacity. The court will address each in turn.

**A. Deliberate Indifference Claim: Individual Capacity**

"The Eighth Amendment safeguards [] prisoner[s] against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(internal quotations and citations omitted). Prison officials violate the Eighth Amendment if they are "deliberately indifference to a prisoners' medical needs." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To establish a deliberate indifference claim, a plaintiff must demonstrate two elements: "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Id.* (citing *Johnson v. Synder*, 444 F.3d 579, 584 (7th Cir. 2006)).

Morisette acknowledges that plaintiff's knee injury constitutes a serious medical condition. [36] at 2. However, she argues summary judgment is appropriate because plaintiff cannot establish deliberate indifference. Not surprisingly, plaintiff claims otherwise.

To establish deliberate indifference, a plaintiff must show that a defendant "acted with a sufficiently culpable state of mind." *Johnson*, 444 F.3d at 585. Deliberate indifference requires more than mere negligence and is not the same as medical malpractice. *Arnett*, 658 F.3d at 751. Instead, it requires a state of mind akin to "criminal recklessness." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1072-73 (7th Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Morisette argues that plaintiff has failed to establish that she acted recklessly. She claims she was not indifferent to plaintiff's medical needs by failing to administer Vicodin because she is a nurse and she was not responsible for determining what medication plaintiff should have received. Morisette states she was merely following Dr. Harmston's orders when she gave plaintiff Naproxen and Tylenol in November 2011. Plaintiff, on the other hand, contends that Morisette failed to notify Dr. Harmston of the prescription. He claims this failure amounts to deliberate indifference. [37] at 5-6.

"As a matter of professional conduct, nurses may generally defer to instruction given by physicians, "but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient."" *Holloway*, 700 F.3d at 1075 (quoting *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)). A nurse acts with deliberate indifference if she "ignore[s] obvious risks to an inmates's health" when following a physician's orders. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683 (7th Cir. 2012). "[D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).

4

Here, plaintiff argues that Morisette was deliberately indifferent because she "refused to discuss" whether Vicodin should be treated for his pain. [37] at 6-7. He claims Morisette simply refused to administer the drug and told plaintiff that "they would not give [him] that pain medication because that pain medication would render [him] susceptible to attack by other prisoners." Pl.'s Dep. at 41; [35-2] at 12. Plaintiff seems to suggest that it was Morisette's responsibility to inform Dr. Harmston of plaintiff's prescription and her failure to inform him of the prescription establishes that she was deliberately indifferent to his medical needs.

Regardless of whether these contentions amount to deliberate indifference, plaintiff fails to offer record evidence to support any of these claims. Indeed, the only evidence which sheds any light on whether Morisette had an obligation to inform Dr. Harmston of plaintiff's Vicodin prescription is her deposition testimony. In it, she testified that "Dr. Harmston would have known [about the Vicodin prescription when plaintiff] came back with orders from the outside physician." Morisette's Dep. at 39; [35-3] at 10. Morisette explained that when plaintiff returned to the jail on November 23, 2011, "[the Whiteside County Jail personnel] would have called [the prescription] into Dr. [Harmston] . . . for orders." Morisette's Dep. at 37; [35-3] at 10.

This evidence is particularly relevant when considered together with the fact that it is undisputed that Morisette was not working when plaintiff returned to jail on November 23, 2011 with his prescription. *See* Morisette's Aff. ¶ 16; [35-4] at 4; *see also* [37] at 2. Morisette testified that she left for the Thanksgiving holiday before plaintiff returned from his doctor's appointment on November 23, 2011 and did not return to work until November 28, 2011, (five days after plaintiff obtained the Vicodin prescription). *Id.* Plaintiff does not dispute this and does not offer any evidence to explain why Morisette was the individual in charge of informing Dr. Harmston of the prescription even though she was not working when plaintiff returned to jail with prescription. Thus, based on this record, the court cannot find that Morisette was responsible for informing Dr. Harmston of the prescription on November 23, 2011. As such, plaintiff cannot established that nurse Morisette was deliberately indifferent for failing to inform Dr. Harmston of the prescription.

As further support, plaintiff has not offered sufficient evidence, likely in the form of expert testimony, that Vicodin was required for his pain or that Naproxen and Tylenol were insufficient. Such evidence is necessary because plaintiff must show that the treatment he received (or the medication he received) was a substantial departure from accepted professional standards. *See Cooper v. Mahone*, No. 11-CV-04455, 2014 WL 4813740 at *3 (N.D. Ill. Sept. 24, 2014) (granting summary judgment because the plaintiff failed to present evidence which indicated that his treatment was a substantial departure from accepted professional standards). The absence of any evidence of this kind cause the court to find that plaintiff cannot establish that Morisette was deliberately indifferent when she administered Naproxen and Tylenol to plaintiff from November 29, 2011 to December 30, 2011. *See Gayton v. McCoy*, 593 F.3d 610, 622-23 (7th Cir. 2010) (affirming a district court's decision to grant summary judgment to a prison nurse because the plaintiff failed to put forth sufficient evidence to demonstrate that the

nurse's "judgment departed so substantially from the professional norm that she acted deliberately indifferent to [the plaintiff's] health."). It is undisputed that when plaintiff complained to nurse Morisette on November 29, 2011, she contacted Dr. Harmston and Harmston ordered a prescription for Naproxen and Tylenol for 14 days. *See* [35] ¶ 26; *see also* [37] at 2. As a nurse, Morisette was entitled to defer to Dr. Harmston's medical judgment and plaintiff has not demonstrated that Harmston's orders were a "substantial departure from accepted professional judgment . . . [.]" *Estate of Cole Pardue*, 94 F.3d at 261-62; *see also Holloway*, 700 F.3d at 1075 (finding that a prison nurse was entitled to summary judgment because there was no evidence that a physician's orders for Ibuprofen and Tylenol put the plaintiff at risk, and noting that "the nurses did not have the authority to prescribe medication."). As a result, plaintiff has not established deliberate indifference and Morisette is entitled to summary judgment.

As an aside, the court notes that plaintiff's reliance on *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir. 2000) is misplaced. In his brief opposing summary judgment, plaintiff claims *Sherrod* is factually analogous to his case and supports his position that summary judgment should be denied. The court disagrees.

In *Sherrod*, the Seventh Circuit Court of Appeals reversed a district court's decision to grant summary judgment to prison medical personnel. *Id.* at 611-12. The Seventh Circuit determined that the district court's decision was erroneous because the plaintiff presented evidence which established that the medical personnel had documented the plaintiff's abdomen pain and noted that they needed to "rule out appendicitis[,]" but failed to do so. *Id.* The Seventh Circuit concluded that questions of material fact necessitated a trial. It determined that a jury could find that the medical staff were deliberately indifferent if they knew that appendicitis needed to be ruled out, but they failed to perform the appropriate tests to make such a determination. *Id.*

The instant case differs from *Sherrod* in many respects. First, it is undisputed that when plaintiff initially complained to Morisette of the pain in his knee she examined him and immediately informed Dr. Harmston of his condition. [35] at ¶ 13. Next, it is undisputed that when Harmston learned of plaintiff's injury, he promptly ordered an x-ray which Morisette arranged to be taken the same day. *Id.* Thereafter, Harmston examined plaintiff and recommended that outside medical professionals diagnose and treat his injury. Plaintiff was permitted to see outside medical professional on a number of occasions. [35] ¶¶ 23, 28, 31, 34, 37, 44.

Most importantly, it is undisputed that every time plaintiff complained of pain he was provided pain medication. [35] ¶ 57. Thus, unlike the medical personnel in *Sherrod* who disregarded complaints of pain and noted the need to rule out an illness, but never did, Morisette immediately informed the appropriate personnel and assisted plaintiff in receiving prompt treatment and medication for his injury. The fact that Morisette administered a pain medication that differed from what plaintiff desired is not the same as a medical professional's failure to rule

6

out an illness. As such, *Sherrod* is not analogous to the facts here and does not support plaintiff's position.

Based on the above, the court concludes summary judgment should be granted to Morisette on plaintiff's deliberate indifference claim asserted against Morisette in her individual capacity.

**B. Deliberate Indifference Claim: Official Capacity**

Plaintiff's complaint also purports to assert a deliberate indifference claim against nurse Morisette in her official capacity. *See* [1] at 1, 3. Morisette argues this claim fails because an official capacity suit requires a constitutional violation. She contends that plaintiff has failed to demonstrate a constitutional violation occurred and therefore, summary judgment is warranted. In his response opposing summary judgment, plaintiff fails to address Morisette's arguments regarding the official capacity claim. *See* [37].

For reasons articulated above, plaintiff has not established that he suffered a constitutional deprivation. Because of this, plaintiff cannot show a constitutional deprivation was caused by an official policy or custom which is necessary for municipal liability under *Monell*. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). As a result, plaintiff's official capacity claim fails.

For the reasons stated above, defendant Jule Morisette's motion for summary judgment [35] is granted. The cause is dismissed in its entirety.

Date: 11/24/2014            ENTER:

*Philip G. Reinhard*
United States District Court Judge

Electronic Notices. (LC)